# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| JESSE L. COLBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16-CV-04301-DGK-SSA |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Jesse L. Colbert ("Colbert") petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"). Colbert applied for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434, and for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. The Administrative Law Judge ("ALJ") found that Colbert could perform other relevant work and was therefore not disabled.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Colbert filed his application under Title II on May 17, 2013, and under Title XVI on August 31, 2013. He alleges a disability onset date of August 31, 2013. The Commissioner denied the application at the initial claim level, and Colbert appealed the denial to an ALJ. After

a hearing, the ALJ denied Colbert's claim on July 31, 2015, finding that he was not disabled under the Act. The Appeals Council denied Colbert's request for review on October 28, 2016. Colbert has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that she is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Discussion

Colbert argues that the ALJ erred: (1) at steps two and three by failing to properly evaluate his diabetic peripheral neuropathy, toxic myopathy, and global assessment of functioning ("GAF") scores, (2) at step four by failing to properly evaluate the medical evidence, (3) at step four by failing to properly evaluate his subjective complaints, and (4) at step five by improperly relying on the testimony of the vocational expert. After reviewing the record and the applicable law, the Court finds these arguments are without merit.

### I. Substantial evidence supports the ALJ's evaluation of Colbert's impairments at steps two and three.

Colbert argues that the ALJ improperly found that his diabetic peripheral neuropathy and toxic myopathy were non-severe. The ALJ evaluates whether the claimant's impairments are severe at the second step of the sequential evaluation process. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment significantly limits a claimant's ability to do work-related activities. *See Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). The impairment must also be expected to result in death or have lasted—or be expected to last—for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. The severe impairment standard is not onerous, but it is not toothless either. *Kirby*, 500 F.3d at 708. It is the claimant's burden to establish severity. *Id.* at 707.

Here, the ALJ found that Colbert's diagnosis with toxic myopathy was a non-severe impairment. The record reveals that on the date Colbert was diagnosed, his examinations were normal and the physician did not prescribe any treatment for the condition. R. at 341-42, 576-77. The fact that a claimant was diagnosed with an impairment does not mean the impairment is

severe. *See Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011). As for Colbert's diabetic peripheral neuropathy, the ALJ addressed this diagnosis while discussing the RFC. R. at 35-36. The ALJ addressed Colbert's diabetes and neuropathy as required by the applicable regulations. *See* 20 C.F.R. §§ 404.1545(e), 416.945(e) ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."). Therefore, because the ALJ addressed Colbert's diabetic neuropathy at step four, the ALJ's failure to discuss it at step two did not affect the outcome and is harmless error. *See Branch v. Colvin*, No. 4:14-cv-1188, 2015 WL 5157752, at *15 (E.D. Mo. Sept. 2, 2015) ("For judicial review of the denial of Social Security benefits, an error is harmless when the outcome of the case would be unchanged even if the error had not occurred." *citing Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir.2003)). The ALJ did not err in its discussion of Colbert's toxic myopathy or diabetic peripheral neuropathy.

Colbert believes the ALJ erred in finding his shoulder impairment would not last 12 consecutive months. *See* 20 C.F.R. §§ 404.1509 and 416.909 ("Unless your impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months."). The record does not indicate any treatment or diagnosis of Colbert's shoulder impairment until February 2015. R. at 30. At the hearing, Colbert's attorney reported that he was scheduled to have his torn rotator cuff surgically repaired on July 1, 2015. Less than two weeks following his surgery, Colbert reported minimal pain and normal strength. R. at 723, 725. Substantial evidence supports the ALJ's finding that Colbert's shoulder impairment would not last at least 12 consecutive months.

Colbert also claims that in considering whether he met or equaled a listed impairment at step three, the ALJ failed to acknowledge that his GAF scores were consistently around 40.

4

Here, the ALJ did not discount Colbert's GAF scores, but only gave them partial weight. R. at 39. The ALJ noted that Colbert's GAF scores ranged from 40 to 65. R. at 38, 616-90. Even without a score variation, GAF scores do not have a direct correlation to the severity requirement in the mental disorder listings. R. at 38; *see Jones v. Astrue*, 619 F.3d 963, 973-74 ("[A]n ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." (internal citation omitted)). The ALJ did not err by according GAF scores only partial weight.

## II. Substantial evidence supports the ALJ's evaluation of the medical evidence in formulating the RFC.

Colbert argues that the ALJ's RFC is unsupported by substantial evidence. "A disability claimant has the burden to establish her RFC." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). The ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). "[S]ome medical evidence" must support the determination of the claimant's RFC. *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam).

Colbert believes that the ALJ's RFC is improper because it is not based on a medical opinion about his functional limitations. To the contrary, Colbert's allegation that the RFC must be supported by a medical opinion is an "incomplete statement of the relevant RFC inquiry established by a host of [the Eighth Circuit's] prior Social Security disability cases." *Lockwood v. Colvin*, 627 Fed. App'x 575, 577 (8th Cir. 2015). "In evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively . . . . Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Id.* (internal citation omitted). Here, "some medical evidence" supports

the ALJ's RFC. *See, e.g.*, R. at 36-38, 307, 468, 573, 623, 628, 636, 644, 646-48, 689, 695-98; *see also Dykes*, 223 F.3d at 867.

Colbert argues that the ALJ improperly evaluated the opinion of Kathryn Findley, Psy.D., Colbert's treating psychologist. In weighing a medical opinion, the ALJ should consider the length, frequency, nature, and extent of the treatment relationship, supportability, consistency with the record as a whole, specialization of the treating source, and other factors supporting or contradicting the opinion. 20 C.F.R. § 404.1527(c). An ALJ must give controlling weight to a treating medical source opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence. *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015). The opinion may be given "limited weight if it provides conclusory statements only, or is inconsistent with the record." *Id.* (citation omitted). The ALJ "may discount or even disregard the opinion . . . where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* (citation omitted).

Here, Dr. Findley opined that Colbert had numerous serious limitations that would cause him to be off task more than 15 percent of a work day, preclude him from completing a normal work day or week without interruptions from his psychological symptoms, and/or be unable to accept instructions or respond appropriately to criticism. R. at 695-98. The ALJ gave Dr. Findley's opinion partial weight because of noted inconsistencies between her conclusions and her own treatment notes. *See Blackburn v. Colvin*, 761 F.3d 853, 860 (8th Cir. 2014) ("Even a treating source does not receive controlling weight if the source's opinions are inconsistent . . . ."); *see also Reece v. Colvin*, 834 F.3d 904, 909-10 (8th Cir. 2016) (holding that the ALJ gave

6

sufficient reasons for discounting treating physician's opinion, including that it was "inconsistent with . . . his own treatment notes"). For example, Dr. Findley's opinion that Colbert would have an extreme limitation in his ability to sustain an ordinary routine without special supervision contradicts her April 13, 2015, report that Colbert was feeling "pretty good" and was alert and oriented. R. at 38, 624, 696. The ALJ also noted that generally, Dr. Findley's treatment of Colbert was conservative without escalating modalities. R. at 38. Dr. Findley noted on numerous occasions that Colbert was alert and oriented. R. at 624, 626, 628, 636, 644, 646, 648. Substantial evidence supports the ALJ's decision to give partial weight to Dr. Findley's opinion.

Finally, Colbert argues that the ALJ should have sought an opinion from his treating physicians or obtained a consultative examination. "The ALJ is required to recontact medical sources and may order consultative evaluations only if the available evidence does not provide an adequate basis for determining the merits of the disability claim." *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). Here, the ALJ had a full record, including medical opinions, Colbert's testimony about his symptoms and his daily activities, and hundreds of pages of medical records. The ALJ did not require additional information because the available evidence provided an adequate basis for evaluating Colbert's claim.

### III. Substantial evidence supports the ALJ's evaluation of Colbert's subjective complaints.

Colbert argues that the ALJ improperly evaluated his subjective complaints. It is well-settled that "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016); *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in the evidence."). The ALJ must "consider all of the evidence in an individual's record when they evaluate the intensity and

persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." SSR 16-3p.

      *a. Physical Impairments*

In considering Colbert's physical impairments, the ALJ found that the objective medical evidence did not support his allegations regarding the symptoms and effects of his heart problems, diabetes, HIV, and arthritis. The ALJ noted that the record shows no specific complaints related to Colbert's HIV. R. at 34, 35, 338. In July of 2014, Colbert reported that he felt good and had not missed any doses of his antiretroviral medication. R. at 35, 489. In March 2015, Colbert had no reports of weakness, weight loss, fatigue, chest pain, cold extremities, muscle or joint pain, stiffness, or swelling. Similarly, Colbert's treatment for coronary artery disease showed minimal complaints. R. at 35, 338, 489. In September 2013, Colbert said he had a few bouts of mild chest pain, no exertional chest pain, and no new complaints. R. at 35, 307. In November 2014, Colbert reported to his cardiologist that he was feeling well. R. at 35, 568.

The ALJ acknowledged that Colbert had difficulty controlling his blood sugars throughout the relevant period. R. at 35. However, the ALJ cited medical evidence that disputed Colbert's allegation that low blood sugar caused severe impairments. In September 2013, Colbert reported paresthesia in his hands and feet, but did not demonstrate any significant clinical signs. R. at 35, 324. In March 2014, Colbert reported worsening neuropathy but no limitations in motion or joint swelling, and no noted diminished sensation or other supportive clinical signs. R. at 35, 492-93. In January 2014, Colbert developed diabetic foot ulcers, but reported that he stopped taking his medications in April 2014.

The ALJ acknowledged the existence of Colbert's physical impairments. R. at 35. At the same time, substantial evidence supports the ALJ's evaluation of Colbert's subjective allegations regarding the symptoms of those impairments.

### b. *Mental impairments*

In considering Colbert's alleged symptoms from his mental impairments, the ALJ noted that he has been diagnosed with depression, bipolar disorder, and panic disorder with agoraphobia. R. at 36. However, the ALJ cited medical evidence that disputed Colbert's subjective allegations regarding his alleged impairments from these diagnoses. The ALJ noted that Colbert had no history of hospitalization for mental impairments and demonstrated no suicidal or homicidal ideations. R. at 36. Also, the ALJ noted that Colbert's mental health examinations included no indications of significant abnormalities in attention, memory, orientation, thought content, appearance, judgment, insight, psychomotor activity, speech, concentration, recall, cognitive functioning, auditory hallucinations, or visual hallucinations. R. at 36, 616-90.

As further support for its finding, the ALJ found that Colbert's reported daily activities—as well as his poor work history—detracted from his allegations about disabling symptoms. *See, e.g.*, *Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014) (finding that claimant's daily activities were inconsistent with allegations of disabling impairments). Colbert reported that he was able to 1) attend to his personal care, 2) prepare simple meals, 3) clean his house, including vacuuming, 4) drive a car, 5) leave his house alone, 6) go shopping, 7) manage his finances, 8) move furniture around, 9) attend produce auctions with a friend, and 10) attend and walk around the state fair. Substantial evidence supports the ALJ's evaluation of Colbert's daily activities in relation to his allegations of disabling symptoms. See *Toland*, 761 F.3d at 936. Furthermore,

Colbert's poor work history—characterized by sporadic jobs with recurrent periods of low earnings—weighs against Colbert's disability allegation. *See Wright v. Colvin*, 789 F.3d 847, 853-54 (8th Cir. 2015).

Here, substantial evidence—in the form objective medical records, evidence of Colbert's daily activities, and his work history—supports the ALJ's credibility evaluation.

### IV. Substantial evidence supports the ALJ's reliance on the vocational expert.

Colbert argues that the vocational expert's testimony does not provide substantial evidence that he can perform other work. If the claimant cannot return to past relevant work, the ALJ proceeds to step five of the sequential evaluation process to determine whether the claimant can perform other work available in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(g). At step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *See King*, 564 F.3d at 979 n.2. "A vocational expert's testimony based on a properly phrased hypothetical question constitutes substantial evidence." *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Here, the vocational expert testifies that Colbert could perform other work such as a small products assembler, a folding machine operator, and a garment sorter. R. at 72-73. Colbert argues that the ALJ formulated an improper RFC and therefore posed a faulty hypothetical question to the vocational expert. As previously explained, the ALJ's RFC determination was supported by substantial evidence. Thus, the ALJ's question to the vocational expert—which was consistent with the ALJ's RFC formulation—was properly posed, and constitutes substantial evidence at step five. *See Goff*, 421 F.3d at 794.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   March 22, 2018              /s/ Greg Kays
                                    GREG KAYS, CHIEF JUDGE
                                    UNITED STATES DISTRICT COURT